[Civil No. 1424.   Filed March 31, 1915.]

[147 Pac. 695.]

CERRO COBRE DEVELOPMENT COMPANY, a Corporation, Appellant, v. WM. B. DUVALL, Appellee.

1. CORPORATIONS — ISSUANCE OF STOCK — CONTRACTS — ENFORCEMENT. Where a corporation issued its stock to a stockholder on condition that he would finance the properties of the corporation, and he failed to do. so, his failure was a breach of contract, and he could not avoid liability by showing that he had made a contract with a third person to furnish the money for the corporation.

2. CORPORATIONS — ISSUANCE OF STOCK — CONTRACTS — ENFORCEMENT. Where a third person paid money for treasury stock of a corporation and was induced to do so by a stockholder's promise to give him stock belonging to the stockholder as a bonus, in consideration of the third person advancing additional money required by the corporation, the third person assumed a duty to the stockholder and not to the corporation; the stockholder not acting for the corporation.

3. CORPORATIONS—CONVEYANCES—TRUSTS.—Where an owner of mining locations, and of options to purchase other mines, agreed to convey all his rights to a corporation in consideration of all its stock, which he received and retained, equity would treat the transaction as completed by conveyance of the rights to the corporation, and payments by the owner from his own funds on the option contract inured to the benefit of the corporation, and a conveyance of the properties to another corporation, with knowledge of the facts, made the latter corporation a trustee, and subsequent payments by it inured to the benefit of the first corporation, and it was entitled to a conveyance

subject to repayment of sums paid by the owner and the other corporation.

4. CORPORATIONS—OFFER TO SELL STOCK—ACCEPTANCE.—Where a stockholder, holding stock as trustee, offered to give the beneficial interest in the stock to a corporation in consideration of its ratification of a sale of properties to another corporation, but the corporation did not accept the offer with the conditions imposed, the corporation did not acquire any equitable rights.

APPEAL from a judgment of the Superior Court of the County of Santa Cruz. W. A. O'Connor, Judge. Affirmed.

### STATEMENT OF FACTS BY THE COURT.

The appellee commenced this action seeking to quiet title to 1,000,000 shares of the capital stock of the West Coast Copper Mines Company, standing in his name as trustee, alleging that the defendant asserts some claim to the said stock adverse to plaintiff, and is threatening to force plaintiff to turn said stock into the defendant's treasury, but that the claim of defendant is without foundation or right.

The means relied upon by which appellee acquired title claimed by appellee are undisputed, and the facts are as follows: On October 1, 1908, W. B. Duvall, appellee, caused to be organized under the laws of the state of Sonora, Republic of Mexico, a corporation called the Tecolote Copper Company, S. A., having an authorized capital stock of 5,000 shares of the par value of $1 per share. Three shares of this stock were issued, one share to each of the three stockholders or officers of the corporation. Duvall then represented that he was the owner of five mining locations situate in the Tecolote Mountains of Sonora, and surrounding the Tecolote and Artemisa mines, and that he was the owner of an optional contract with Francisco Aguilar, Victor Aguilar and ———— Torres, the owners of the said Tecolote and Artemisa mines, upon which optional contract he, Duvall, had that day made and paid $15,000, and agreed to pay at his option the further sums, $30,000 on the 1st day of May, 1909, and $50,000 on the 1st day of October, 1909. He thereupon offered to convey to the said Tecolote Copper Company, S. A., all his right, title, interest and estate in and to the said mining claims and in and to said optional contract, and to pay said corporation $15,000, in consideration of the entire capital stock of the Tecolote

Copper Company, S. A. The corporation accepted the said offer, issued its entire capital stock to Duvall, received his conveyance of the mines and the money, and caused a new option to be made with the Aguilars and Torres direct to it, providing for payments of $30,000 to be made May 1, 1909, and $50,000 to be made October 1, 1909. Whereupon the Aguilars and Torres agreed to convey to the Tecolote Copper Company, S. A., said Tecolote and Artemisa mines described in the option. On the 8th day of October, 1908, Duvall organized a corporation under the laws of Arizona, called and named the West Coast Copper Mines Company, having an authorized capital stock of 2,000,000 shares of the par value of $1 per share. He caused three persons to subscribe and take over one share each of said stock. He thereupon appeared before the stockholders and directors and represented to them that he was the owner of the entire capital stock of the Tecolote Copper Company, S. A.; that the Tecolote Copper Company owned the five mines above mentioned and an optional contract with the Aguilars and Torres to buy other mines; that the five mines were unencumbered; and that the optional contract was encumbered by a $15,000 payment made by him (Duvall) to the Tecolote Copper Company, S. A., which sum and said money was paid by it on the Aguilar and Torres option on the 1st day of October, 1908, and by the further obligation to pay the remaining $30,000 and $50,000 as provided by the terms of said option. He thereupon offered to transfer all his right, title and interest in and to said Tecolote Copper Company, S. A., stock to said West Coast Copper Mines Company, in consideration of all the capital stock of said West Coast Copper Mines Company, and a note payable to himself in the sum of $15,000 due in six months with interest at the rate of 6 per cent. The West Coast Copper Mines Company accepted the offer, and issued to Duvall, 1,999,997 shares of stock, and delivered to him said note. Duvall transferred to said West Coast Copper Mines Company all of the stock of the Tecolote Copper Company, S. A., and returned to the treasury of the West Coast Copper Mines Company 999,997 shares of its stock as a treasury fund, and caused to be issued to himself 1,000,000 shares, which were issued to him in his name as trustee.

These facts are not disputed as having occurred, but appellant claims that it is the beneficial owner of the 1,000,000 shares of stock, and that its ownership arose from the following state of facts, which are without dispute: About April 12, 1907, appellee, Duvall, entered into an optional contract with Francisco Aguilar, Victor Aguilar and ——— Torres, by the terms of which the Aguilars and Torres agreed to convey to W. B. Duvall or his assigns the Tecolote and Artemisa mines, being the identical property described in the above-mentioned option, for a consideration of $100,000 gold, payable as follows: $5,000 to be paid July 1, 1907; $45,000 to be paid September 1, 1908, and $50,000 to be paid May 1, 1909. The lands surrounding these mines were open to denouncement under the laws of Mexico; that is, the land was open to location. Duvall took steps to have the surrounding land denounced, or located, in his name, and caused to be organized the Sierra de Cobre Development Company, S. A., a corporation under the laws of Mexico, having an authorized capital stock of 5,000 shares of the par value of $1 per share. He caused to be issued to three persons one share of stock each to conform to the requirements of the laws of Mexico. Duvall then caused said corporation to issue to him the remaining shares of the capital stock of said corporation in consideration of his promise to assign said Aguilar option to it, and to convey to it all his right, title, claim and interest in the surrounding lands denounced in his name, or that might thereafter be denounced in his name. Duvall appointed one Camou as his attorney in fact, and instructed such agent to assign the said option and convey the said mining rights to the Sierra de Cobre Development Company, S. A., and intended and expected such agent to carry out his instructions. Duvall was never advised as to whether the agent executed the instructions. The stock was issued in Duvall's name and delivered to him. On April 26, 1907, Duvall caused the defendant, Cerro Cobre Development Company to be organized under the laws of Arizona, having an authorized capital stock of 3,000,000 shares of the par value of $1 per share. Appellee W. B. Duvall, Chas. D. Ricker and S. D. Gilles, each subscribed for one share of stock, and as the stockholders of defendant company they adopted the following resolutions:

"It is hereby resolved that the corporation purchase from W. B. Duvall all his right, title and interest in the stock held by him in the Sierra de Cobre Development Company of Mexico, which constitutes all of its stock, said corporation being incorporated under the laws of the state of Sonora, with a capitalization of $5,000, and which owns all right and title acquired by W. B. Duvall from the Mexican government in a certain copper mining region located in the southern part of the district of Altar and northwestern part of the district of Hermosillo, in the state of Sonora, Mexico, in the vicinity of Tecolote Mountains, about thirty miles west of Carbo, Sonora, Mexico, and about thirty-five miles east of the gulf of Lower California, and who hereby waives lesion to any and all denouncements which company has and expects to acquire, bonds and leases on certain mining property in the locality herein referred to for the consideration of $1 in hand paid and all the stock of this corporation, making said stock full paid and nonassessable. To provide the necessary funds for the different properties now controlled by this company, said W. B. Duvall assigns for $1 in hand paid and other valuable considerations, one million four hundred ninety-nine thousand nine hundred and ninety-seven (1,499,997) shares of the capital stock of this company to the treasury."

Duvall negotiated a sale of 150,000 shares of the treasury stock to one P. M. Sharples for 10 cents a share, thereby placing in the treasury $15,000. Of this fund $5,000 was applied to making the first payment under the Aguilar option payable on July 1, 1907. The balance of the money was used by the Sierra de Cobre Development Company, S. A., on the mines. The September 1, 1908, payment of $45,000 on the option contract was about to mature and no fund to meet it was provided. Duvall opened negotiations with the Aguilars for an extension of the time for payment. These negotiations resulted in modifying the option contract so that $15,000 would become payable on October 1, 1908, $30,000 would become payable on May 1, 1909, and $50,000 would become payable on November 1, 1909. With this modification agreed to, Duvall secured an individual loan of $16,000 from Sharples, giving Sharples individually owned collateral with Duvall's personal notes. This money was then advanced by Duvall to the Tecolote Copper Company, S. A., which he

caused to be organized and with a conveyance of all the mines denounced by and standing in his name, in consideration of all the capital stock of the said Tecolote Copper Company, S. A., as above set forth. On April 17, 1909, W. B. Duvall and Chas. D. Ricker, two of the three directors of the Cerro Cobre Development Company, held a meeting, in the name of a special meeting of the directors of the Cerro Cobre Development Company, but without notice to the other director, and therefore without authority, at which meeting said Duvall and Ricker adopted the following as a resolution of the board of directors:

"Present: W. B. Duvall and Chas. D. Ricker, being a quorum of said board. . . . The minutes of the last meeting were read and approved. Upon motion duly made and seconded, it was voted to ratify the sale of all the right, title and interest of this company in its properties located at Tecolote, Altar district, Sonora, Mexico, consisting of the Anexas de la Mina del Tecolote, Anexas de Cobre de la Mina del Tecolote, Anexas de Cobre Cerro de Cobre, Anexas del Cerro Cobre, and Mina Poso for the consideration of one dollar ($1.00) in hand paid and 1,000,000 shares of the West Coast Copper Mines Company of Arizona, said stock to stand for the term of ten years in the name of W. B. Duvall, trustee, and said trusteeship to be irrevocable without the consent of W. B. Duvall, and in case of the death of W. B. Duvall, the board of directors shall have the right to vote said stock at all stockholders' meetings, also to have the right to sell said stock at any time, but the amount received for said stock shall be placed in the treasury of the company and the price to be agreed upon by the majority of the board of directors."

At the time this resolution was so adopted as above set forth, Duvall had, on October 1, 1908, caused the Tecolote Copper Company, S. A., to be organized, and had caused to be conveyed to it the above-named mines and had caused on that date the Aguilars and Torres to give to said Tecolote Copper Company, S. A., a new dated contract of option upon receiving payment from said corporation of the sum of $15,000, providing in said new contract of option to receive the second payment of $30,000 on May 1, 1909, and the third and last payment of $50,000 on November 1, 1909, and in consideration of such payments to convey the Tecolote and

Artemisa mines to said Tecolote Copper Company, S. A.   In consideration of causing said mining claims to be conveyed to the Tecolote, and in causing said new contract of option to be made by the Aguilars and Torres to the Tecolote Copper Company, S. A., and on payment to said Tecolote Copper Company, S. A., said $15,000, said Tecolote Copper Company, S. A., issued and delivered to W. B. Duvall its entire capital stock.   And on said date, when said resolution was so adopted as above set forth, W. B. Duvall had, on October 8, 1908, caused the West Coast Copper Mines Company to be organized, and had transferred to it all the stock of the Tecolote Copper Company, S. A., and had received in consideration of said transfer a note for $15,000 and 1,000,000 shares of the West Coast Copper Mines Company to be issued to him in his name as trustee.   So these matters stood on April 17, 1909, when said resolution was so adopted by Duvall and Ricker, and so they stood until November 29, 1910, when the following resolution was adopted by a majority of the board of directors of the Cerro Cobre Development Company at a legal meeting duly called and held.   D. T. Sharples and Chas. D. Ricker were present, and appellee, the third director, was not present, although notified of the meeting.   At the meeting a resolution was offered reciting at length the resolution adopted at the previous meeting held on April 17, 1909, and then recited:

"And whereas it was represented at said meeting by W. B. Duvall that P. M. Sharples, the owner of a majority of the capital stock of the Cerro Cobre Development Company issued and outstanding, had agreed and consented to the placing of 1,000,000 shares of the capital stock of the West Coast Copper Mines Company of Arizona in the name of said W. B. Duvall as trustee, and by this representation Charles D. Ricker, the only other director present at said meeting, was induced to vote with him, the said W. B. Duvall, to authorize said trusteeship; and whereas it appears that P. M. Sharples and other stockholders had never been informed of said proposed trusteeship and had never agreed to it and now protest against it; and whereas D. T. Sharples, one of the board of directors of this company, received no notice of said directors' meeting at which said trusteeship was voted upon and had never executed any waiver of notice; and whereas the placing of

1,000,000 shares of the capital stock of the West Coast Copper Mines Company in the name of W. B. Duvall, trustee, was secured through false and fraudulent representations and was against the interest of the stockholders of the Cerro Cobre Development Company and was of itself an illegal action: Now, therefore, be it resolved that the board of directors of the Cerro Cobre Development Company repudiate and declare utterly void and of no effect that part of said motion reading as follows: 'Said stock to stand for the term of ten years in the name of W. B. Duvall, trustee, and said trusteeship to be irrevocable without the consent of W. B. Duvall, and in case of the death of W. B. Duvall, the board of directors shall have the right to vote said stock at all stockholders' meetings, also to have the right to sell said stock at any time but the amount received for said stock shall be placed in the treasury of the company and the price to be agreed upon by the majority of the board of directors.' And it is further resolved that the secretary of this company be instructed to send to W. B. Duvall a copy of this resolution and to demand of the said W. B. Duvall the return of said 1,000,000 shares of capital stock of the West Coast Copper Mines Company wrongfully issued to him as trustee, to the treasurer of the Cerro Cobre Development Company. . . . ''

By further resolutions W. B. Duvall was dismissed as general manager of the company and a meeting of stockholders was called to elect a new board of directors and other business transacted. Duvall received notice and a demand for the return of the stock and refused to comply with the demand. After the West Coast Copper Mines Company was organized and had issued to Duvall 1,000,000 shares of its stock as trustee, and had made to him its note for $15,000, the West Coast Smelting & Refining Company was organized, and took over from the West Coast Copper Mines Company all its assets, viz.: the entire capital stock of the Tecolote Copper Company, S. A., and gave to either the West Coast Copper Mines Company or to W. B. Duvall its note for $15,000. The West Coast Smelting & Refining Company in due time paid the note, so that such payment discharged the Duvall and West Coast Smelting & Refining Company's notes and the notes of W. B. Duvall payable to P. M. Sharples. The West Coast Smelting & Refining Company also caused to be

paid to the Aguilars and Torres the $30,000 payment due on May 1, 1909, and the $50,000 payment due on November 1, 1909. Duvall contends that when he sold the 150,000 shares of Cerro Cobre Development Company's stock to P. M. Sharples, such transaction was part of another contract entered into by Sharples and Duvall, and that the terms of that contract were as set forth in the complaint as follows:

"That the said Sharples should purchase 150,000 shares of the said treasury stock of the said Arizona corporation for the stipulated price of 10 cents a share. That $5,000 of the proceeds of the sale of said 150,000 shares of the treasury stock should be applied to the first payment upon the said mines under the said agreement and option with the said Aguilar and his associates. That if upon the expenditure of the balance of said $15,000 provided by the purchase price of the treasury stock by said Sharples the said Sharples should so desire, he should have the right to purchase further treasury stock of the said corporation, the proceeds thereof to be used in the development or equipment of the said mines covered by said agreement and option and in the payment of the remaining $95,000 purchase price thereof; the price of said treasury stock to be mutually agreed upon between the plaintiff and the said Sharples, the same, however, to be not less than 10 cents per share. That it was further agreed that if the said Sharples should, in pursuance of such agreement, furnish the full $100,000 purchase price of the said option, the plaintiff should give to the said Sharples 750,000 shares of the capital stock of the said Arizona corporation, the said 750,000 shares to be not of the treasury stock of the said corporation, but, being one-half of the 1,500,000 shares of the said stock of the said Arizona corporation, which it had been contemplated by the plaintiff as aforesaid, should be retained by him for his own use."

Duvall introduced substantial evidence in support of the terms of this contract as pleaded, and the defendant introduced substantial evidence contradicting that part of the contract by which Sharples acquired the 750,000 shares of stock on condition that he furnish the full sum of money required. The existence of the condition precedent to Sharples' ownership of that particular stock was made a contested matter upon the trial. The testimony of Duvall attempting

to explain the reason why the 1,000,000 shares of stock was placed in his name as trustee was, in effect, that Sharples refused to furnish the money necessary to pay for the mines and operate them as he had agreed with Duvall, and because Sharples had failed to perform that condition, and because Sharples had refused to return to Duvall the 750,000 shares of stock given to Sharples as a consideration for Sharples' promise to perform the condition; that Duvall caused the Tecolote Copper Company, S. A., to be organized and to acquire the mines from Duvall and the new option from the Aguilars and Torres, and caused the West Coast Copper Mines Company to be organized, so that the necessary fund could be raised through the organization of said corporation to finance the mines. With Sharples as the principal stockholder of the Cerro Cobre Development Company, holding 900,000 shares of its stock, and being a creditor of that corporation to the amount of $15,000 advanced by him to that corporation, and he refusing to advance further money for its purposes, even to return the 750,000 shares and remain the holder of 150,000 shares would be considered by intending investors in Cerro Cobre Development Company as a withdrawal of Sharples from that company, and deter such investors from taking up the enterprise. Therefore Sharples, having refused to advance more money in order to pay for the property and operate the mines, required Duvall to follow another course to raise that money, and the course he followed was that stated above. In order to further give Sharples an opportunity to perform his agreement with Duvall, Duvall caused the 1,000,000 shares of West Coast Copper Mines Company stock to stand in his, Duvall's, name as trustee. If Sharples should perform the condition of the contract, then the 750,000 shares of Cerro Cobre Development Company stock would become the property of Sharples, and the 1,000,000 shares of the West Coast Copper Mines Company stock would become the property of the Cerro Cobre Development Company. If Sharples continued to refuse to perform the condition, then Duvall would have the right to a return of the 750,000 shares of Cerro Cobre Development stock, and retain the 1,000,000 shares of West Coast Copper Mines Company stock, and Cerro Cobre Development Company would have no rights therein. Such are the reasons given by Duvall for having the stock

issued in his name as trustee. The cause was tried to a jury, and submitted upon a number of special interrogatories and upon an instruction to return answers thereto as special verdicts and to return a general verdict. The jury returned as special verdicts answers to the special interrogatories except three, but they disagreed upon answers to those, and returned a general verdict in favor of the plaintiff appellee. The defendant appellant moved for judgment upon the special verdicts, notwithstanding the general verdict, which motion was denied. The court rendered judgment for the plaintiff in accordance with the general verdict. The defendant moved for a new trial. This motion was overruled. From the order refusing a new trial and from the judgment defendant has appealed.

Mr. Selim M. Franklin and Messrs. Cass & Sames, for Appellant.

Mr. Eugene S. Ives and Mr. Frank J. Duffy, for Appellee.

. CUNNINGHAM, J.—Upon the trial the controversy centered about the terms and conditions of the Sharples-Duvall contract of April 12, 1907, the defendant contending that Sharples purchased 150,000 shares of the Cerro Cobre Development Company's treasury stock, paying therefor 10 cents per share, or $15,000, and, as an inducement to purchase the said stock, W. B. Duvall offered to give him 750,000 shares of his, Duvall's personal stock as a bonus, and that Sharples accepted that offer, and the $15,000 was. paid upon no other condition. On the other hand, Duvall contends that the 750,000 shares of stock was transferred to Sharples in consideration of Sharples' promise to finance the mines. Both parties agree that Sharples bought and paid for and became the absolute owner of the 150,000 shares of Cerro Cobre Development Company stock. If Cerro Cobre Development Company had issued Sharples the 750,000 shares of its stock on condition that he finance the mines, and he failed to perform that condition, he would be liable to the Cerro Cobre Development Company for a breach of his contract. Sharples could not avoid liability by showing that he had made a contract with and paid W. B. Duvall to furnish the money that

he (Sharples) had agreed to furnish, and therefore the Cerro Cobre Development Company must look to Duvall for the damages. Such a showing would not present a defense, for the reason there is shown no contractual relation between the Cerro Cobre Development Company and Duvall by which the duty of Duvall to the Cerro Cobre Development Company was violated. That is this case. Sharples owed no duty to the Cerro Cobre Development Company to furnish the required sum of money by his contract with Duvall, if the contract did or did not contain the condition Duvall contends for. In the event the contract was, as Sharples contends, that contract was fully executed when Sharples paid the $15,000 to the Cerro Cobre Development Company and he received the 150,000 shares of its treasury stock. If he paid the money for the treasury stock, and was induced to do so by Duvall's promise to give Sharples 750,000 shares belonging to Duvall as a bonus in consideration that Sharples would advance the additional money required to finance the mines, then Sharples assumed a duty, not to the Cerro Cobre Development Company, but to Duvall, because Sharples' promise was to Duvall, and the consideration for the promise moved from Duvall. It is not contended that the contract was made by Duvall for the Cerro Cobre Development Company, or that the contract was a contract between Sharples and the Cerro Cobre Development Company represented by Duvall. The consideration paid to Sharples was paid with the individual property of Duvall. Any duty that such contract cast upon Sharples was owing to W. B. Duvall, and not to the Cerro Cobre Development Company, in either view of the contract. The controversy over the terms and conditions of the Sharples-Duvall contract was immaterial to a decision of this cause.

The defendant, Cerro Cobre Development Company, on April 26, 1907, accepted the offer of W. B. Duvall by which Duvall proposed to transfer all the capital stock of the Sierra de Cobre Development Company, S. A., to it in consideration of its issuing to him all of its capital stock. The stock was issued to Duvall, and Duvall transferred the stock of the Sierra de Cobre Development Company, S. A., to defendant. At the same time, and as a part of this transaction, the following was transacted:

"To provide the necessary funds for the different properties now controlled by this company (Cerro Cobre Development Company), said W. B. Duvall assigns for $1 in hand paid and other valuable considerations, one million, four hundred ninety-nine thousand and nine hundred ninety-seven (1,499,-997) shares of the capital stock of this company to the treasury."

Duvall thereby provided the corporation with a property to be used by it to raise the necessary money. Out of a part of this property it raised $15,000 by a sale of 150,000 shares to Sharples. Thereupon Sharples and Duvall became the controlling stockholders of defendant company. In order to protect their respective rights, Sharples advanced $15,000 in money to the corporation, and the money so advanced was used by the corporation for the Sierra de Cobre Devlopment Company, S. A., mines. Sharples refused to furnish the Cerro Cobre Development Company with any more money. Duvall then borrowed $15,000 and secured the loan with his individual note and collateral belonging to him. He ascertained that his attorney in fact had failed to carry out instructions, and that the mines and options remained in his name and had not been placed in the name of the Sierra de Cobre Development Company, S. A. Five thousand dollars had been paid on the option, and $95,000 of the purchase price remained unpaid, and $15,000 of that sum would mature on October 1, 1908. He believed that he had made a contract with P. M. Sharples by which Sharples had agreed to furnish the money with which to pay the purchase price of the mines covered by the optional contract, and Sharples had refused to furnish the money, and thereby had forfeited all right to the 750,000 shares of stock. In order to protect his rights, Duvall disregarded his promise to transfer the option and convey the mines standing in his name, to the Sierra de Cobre Development Company, S. A., and caused the option to be transferred to and the mines conveyed to the Tecolote Copper Company, S. A., a corporation he caused to be organized for that purpose, and took all, save three qualifying shares issued to directors, of the stock of that company and gave to that company $15,000 which he had borrowed. Then the Tecolote Copper Company, S. A., paid the $15,000 installment due on that day and Duvall caused a new optional contract to be

XVI Ariz.—32

drawn, executed, and delivered by the Aguilars and Torres to the Tecolote Copper Company, S. A., providing for the payment of $30,000 on May 1, 1909, and a final payment of $50,000 on November 1, 1909. The contract of the Aguilars and Torres with W. B. Duvall was in force on October 1, 1908, providing for a payment of $15,000 on that day, the payment of $30,000 on May 1, 1909, and a final payment of $50,000 on November 1, 1909. Such payments, with the payment of July 1, 1907, which had been made, constituted the full purchase price of $100,000 required to be paid for the mines.

There is no pretense that the Sierra de Cobre Development Company, S. A., or its holding company, the Cerro Cobre Development Company, took any part in the transaction of October 1, 1908, by which the Tecolote Copper Company, S. A., acquired the transfer and conveyance therein involved, or consented to any such transaction or ratified the same at any subsequent time. Consequently, applying the well-recognized rule of equity that equity will regard that as actually done which ought to have been done, Duvall had no rights in the mining claims to convey to the Tecolote Copper Company, S. A., nor any rights in the optional contract to surrender to the Aguilars and Torres, for the reason he had promised to convey his rights in the mines and transfer and assign his rights in the optional contract to the Sierra de Cobre Development Company, S. A., for a consideration of all its capital stock, and he had received and retained this consideration. Equity will regard that transaction as one in which W. B. Duvall had actually conveyed and assigned said properties as he promised. When Duvall caused the properties to be transferred to the Tecolote Copper Company, S. A., it took only such title as Duvall had, because it was chargeable with full knowledge of the matters and conditions under which the title to that property stood in Duvall's name.

If Duvall had directly paid the $15,000 from his own funds upon the optional contract, the payment would have accrued to the benefit of the Sierra de Cobre Development Company, S. A., and its stockholder, the Cerro Cobre Development Company, and those corporations would have become the debtors of Duvall to the amount of the money paid. Duvall, indirectly, caused the same thing to be done. He surrendered the optional contract which did not belong to him, before it

expired. He paid the Tecolote Copper Company, S. A., $15,000 for all of its stock, and then, as controlling stockholder, but to his individual interest, caused that money to be paid to preserve his rights to the property under option. The Tecolote Copper Company, S. A., thereby became the holder of an interest in the mines, but it held that interest as Duvall had previously held it, in trust for the use of the Sierra de Cobre Development Company, S. A., and that corporation became its debtor to the amount paid for its benefit. When the subsequent payments were made to the Aguilars and Torres by Duvall's agent the West Coast Smelting & Refining Company, the Sierra de Cobre Development Company, S. A., became its debtor to the amounts so paid, and when the said West Coast Smelting & Refining Company paid the P. M. Sharples note, in effect it thereby discharged the installment due and payable by the Sierra de Cobre Development Company, S. A., on the Aguilar-Torres option on May 1, 1909, and thereby became the creditor in that sum.

By reason of all the corporations participating in the transactions resulting in the West Coast Smelting & Refining Company acquiring the beneficial titles of the mining claims and the mines affected by the Aguilar option, being chargeable with full knowledge of Duvall's relation to the titles, and Duvall being the controlling spirit in each of the steps taken by which the West Coast Smelting & Refining Company furnished the money and received the said titles; it received the titles burdened with all the infirmities incident thereto while the property stood in the name of its real grantor, W. B. Duvall. The effect of the various transactions is that the Sierra de Cobre Development Company, S. A., is still entitled to have the Tecolote Copper Company, S. A., convey to it the mines denounced in the name of W. B. Duvall, and to have the Tecolote Copper Company, S. A., convey to it the mines covered by the Aguilar-Torres option, when it has satisfied the equities of the holder of the record title—the holder of the Duvall title in the mines denounced by him, and the holder of the Aguilar and Torres title to the mines held under the Duvall option. The Sierra de Cobre Development Company, S. A., lost none of its rights in the property by reason of the numerous transactions resulting in the Tecolote Copper Company, S. A., succeeding Duvall and the Aguilars and Torres

as the holders of the record titles to the property involved, and by reason of the West Coast Smelting & Refining Company discharging Duvall's liabilities to the Aguilars and Torres, and certainly Duvall acquired none of defendant's rights by those transactions.

The defendant had no beneficial interest in the 1,000,000 shares of stock issued to Duvall as trustee. That stock represented no property belonging to defendant in any sense. By means of the resolution of April 17, 1909, Duvall offered to give the Cerro Cobre Development Company the beneficial interest in the 1,000,000 shares of stock, in consideration that it ratify the sale of the five mines denounced to the Tecolote Copper Company, S. A., the beneficial title to which was vested in the Sierra de Cobre Development Company, S. A. The offer of Duvall, at most, was an offer which, if accepted as proposed, would have resulted in a contract; but, on November 29, 1910, the Cerro Cobre Development Company, by a positive corporate act, refused the offer as made by Duvall, and attempted, it seems, to accept that part of the offer beneficial to it, viz.: the 1,000,000 shares of West Coast Copper Mines Company stock, but rejected the conditions under which the offer was made, viz.: that the stock would stand in the name of W. B. Duvall, as trustee, for 10 years, etc. The offer, not having been accepted as made, failed to become a contract of the parties, and conferred no rights upon either. The defendant company having refused the condition, in effect rejected the entire offer.

If said transaction had been effected, as attempted, the result would have been to vest the equitable and legal title of the said five mines in the Tecolote Copper Company, S. A., and the beneficial title in the West Coast Copper Mines Company as the stockholder of the Tecolote Copper Company, S. A., and in the Cerro Cobre Development Company as the controlling stockholder of the West Coast Copper Mines Company, but the Cerro Cobre Development Company refused to relinquish its equities in the five mines, as held by the Sierra de Cobre Development Company, S. A., by a corporate act positive in its nature, repudiating and declaring void the attempt of Duvall to bring about the change in its equities. The result was that so far as the rights of the defendant are concerned, its equities in the properties were

unchanged, and Duvall retained all the property in the stock that he acquired when he received it. When the Cerro Cobre Development Company rejected the stock, the word "trustee" became descriptive of the person and conferred no rights upon this defendant.

There were no disputed matters of fact material to the case for the decision of the jury. The questions presented are questions of law for the court; all matters of fact material to the case being without dispute.

Upon the whole case the verdict of the jury is correct, because under the undisputed evidence the defendant was not entitled to recover in any event.

The judgment is affirmed.

ROSS, C. J., and FRANKLIN, J., concur.

Rehearing pending.